v. Brotherhood of Locomotive Engineers, et al. Good morning. May it please the Court, Douglas Martland, Assistant Attorney General for the Commonwealth. With the Court's permission, I'll reserve two of my eight minutes for rebuttal. When Congress enacted a law providing railroad workers a specific type of short-term disability benefit, it didn't intend to preempt states from providing other types of sickness-related benefits like employer-paid sick time. The sickness benefits that Section 363B preempts are limited to the sickness benefits provided by the RUIA, and the railroads offer no good reason for why that phrase means one thing everywhere else in the statute. How would this, I mean, you call it a short-term disability benefit or illness benefit or sickness benefit, whatever we call it, to set that up to decide what it is Congress needed to decide on what the elimination period was, if any, in other words, how many days one would need, go say, before you start getting the benefit. They needed to decide on the duration of the benefit, and they needed to decide on the rate of pay that would equal the benefit. And so they did that. They picked four days, they picked 135 or more, if you have more seniority, and they picked, what, 60 percent of pay. It seems to me that what Massachusetts has done is concluded that's not enough, that short-term disability benefit. There should be a shorter elimination period, i.e., zero days, and the pay of rate during that period of time should be 100 percent, not 60 percent. How do you, if that, if what I just said is correct, how do you reconcile that with the statutory language? Your Honor, comparing the two benefits is a bit like apples and oranges. Earned sick time is for something like picking your sick kid up at school, compared to being out of work for a medium or long length of time due to a serious injury or illness. Well, some of the, you know, but the Massachusetts law has multiple benefits, so we'll get to the severability issue, but certainly some of the reasons that Massachusetts requires the employer to pay immediately without an elimination period include sickness. Certainly at a very broad level, Your Honor, I agree with you that there is a sickness component to the Massachusetts law, but the two benefits that are being provided are nothing alike. If you look at both... But one is more. In other words, one is longer, one is shorter, one pays more, one has a four-day elimination period, the other has a zero-day elimination period. But, you know, it can't be the rule that Congress only preempted a state from passing a law that provided the exact same benefits that the federal law did. It must be that Congress had in mind it was preempting something that gave more. What the legislative history establishes here, Your Honor, both the 1938 and the 1946 legislative history, is that Congress was concerned with states requiring duplicate benefits. And here these are not duplicate benefits. It is clear at the time that states in 1938, when the Act was established for unemployment benefits, that states had similar programs for unemployment for all workers, that would include railroad workers. And the states, or that Congress intended to preempt that duplicative benefit. Excuse me. Go ahead. The sickness benefits that were added to the law in 1948, that they were added to a law dealing with unemployment compensation, correct? So that premise remained the same, that individuals who would receive the sickness benefit, they were unemployed. Is that correct? That is correct. The situation... But just to follow that out, individuals under the Massachusetts law who will get the benefit of the sick leave, they continue to be employed, do they not? They continue to be employed. They continue to be paid by their employer. That's correct. So they are receiving, to use a word from the statute, they are receiving remuneration that they have earned, is that correct? Exactly, Your Honor. Under the federal law, that sickness benefit is a form of income replacement for an individual who is unemployed, is that correct? It is a wage replacement paid by an insurer for a shorter or a longer period of time, but at a percentage of their salary. Why, if those characterizations are accurate, why does that matter for purposes of the preemption argument? What Congress was concerned about here was preempting states requiring duplicate liability, so states requiring railroads to provide short-term disability benefits. There is no dispute here that the earned sick time law that is paid by the employer while the employee continues to work is not a short-term disability benefit as that term is understood. What's Massachusetts' position on severability? Suppose we should decide that there is a preemption, but the preemption is of sickness benefits and it doesn't apply to someone going to see a lawyer because they have some case. How do we deal with the Massachusetts statute? Under this Court's ruling in Schwann, this is... No, Schwann does not quite deal with this situation. First, you did not make a severability argument in your initial challenge in the district court. Isn't that correct? We acknowledge that in our brief. I acknowledge that today, Your Honor. Okay, so we have a potential waiver question here. It's true you mentioned it at oral argument, but the district court didn't even entertain the topic of severability, perhaps because the state failed to raise it. Well, as my brother, I anticipate, will tell you, is that they believe they've sufficiently raised it for argument below and here today. They did, but you didn't. They're interveners. You're the plaintiff in the case. No, but seriously, put the waiver aside. This is the commonwealth of Massachusetts, after all. There is a lot of case law out there that says that the Court of Appeals really should send an issue of severability, which has not been developed in the district court, back to the district court for evaluation. Is that what you would like to see here, if you are in that position? Certainly, that would be one option that the court could pursue that we would not be opposed to. We think it is clear, both on the ballot summary that was provided to the voters, as well as the session law that was actually enacted by the legislature, that this statute is severable, that if this court were to declare that the RUI preempts the earned sick time law as to an employee's own illness, that that portion could be excised out and the rest of the act could remain functional. So that would apply to illnesses of an employee's spouse or child or anything like that. And the domestic relations. And the domestic issues as well. So in your view, two subsections of the statute would survive? Every subsection relating to the accrual of time, the mechanisms for using the time, everything but the specific subsection relating to the employee's own illness could survive. So that could be neatly removed from the act and the rest of the benefits would still be available. So just to be clear, you would say that what survives is both the accrual of time and the permission to spend the time on those subjects? That is correct, Your Honor. It would just be the use as to their own illness. That would be precluded under Section 3603B. Let me ask you to be a little more specific. How then would you classify under Subsection 3 attending the employee's routine medical appointment? That is preventative care. So that could survive. And then how about going to a doctor to address psychological or physical effects of domestic violence? Certainly the psychological effects would perhaps be prospective in the sense that it related to preventative. So that could survive as well as the effects of domestic violence. Don't we have a problem that some psychological and physical effects of domestic violence could certainly be disabling? There could be in a limited factual circumstance. I acknowledge there could be some overlap, but certainly not as to the legal consequences of domestic violence. Thank you. You've still got your two minutes later. Good morning, Your Honors. May it please the Court. Michael Wally for the Union. Excuse me. I'm going to focus on two points. First, our position that the paid sick leave provisions of the Massachusetts law are in fact different from sickness benefits provided by the RUIA, and that's well-supported by court decisions and well-recognized authorities. And second, I'm going to address the severability issue as well, which, as Judge Lynch noted, was raised by the unions below. Can I ask a question? I understand you will contest this, but the payment of wages and the hours they work are heavily regulated by the federal government for railroad employees, that they set certain bases, but that the employees also have collected bargaining rights and that there are in fact a lot of union contracts that add to the benefit package that employees get. It has to be approved by the board and sort of consistent with the federal scheme. Is that correct? No, Your Honor, that's not correct. The federal government does not establish wages and work rules for the employees. That's a product of collected bargaining. Okay, so collected bargaining plays an even greater role than I had understood. Yes. So could the unions bargain for what state law sets forth here as a benefit of employment? Yes. And have you tried? It's not developed in the record, Your Honor, from my experience. There have been efforts with these plaintiffs now at the railroads to negotiate that. Some unions have been successful, some have not. But it is an appropriate subject of collected bargaining if that's what you're driving at. So can you give me an example? You represent Massachusetts Railway workers. Sort of additional benefits that they've gotten as a result of collected bargaining? Certainly. Personal leave days, vacation days have been negotiated. Leaves of absence provisions have been negotiated. Including leaves of absence for family members who are sick? Leaves of absence provisions don't generally cite the reasons that an employee would request such a leave. The employee would request from management a leave. Certain agreements would say such leaves shall not be unreasonably denied. There are certain railroads and certain unions have restrictions on the length of such leaves. Such leaves do have impact on employees' seniority in the long run. Okay. Thank you. I've diverted you from your argument. I would say, Your Honor, that the argument that's being made by the railroads here is not that collected bargaining or the federal laws that regulate collected bargaining are implicated under the Railroad Unemployment Insurance Act. No, they're not. They did. I will say that their complaint in the district court raises preemption under other statutes. Those statutes have been – those claims have been preserved by the railroads. Let's look, just as you made the good point, the statutory claims. So pretend the union hasn't negotiated anything in excess and all the workers have is the benefit of whatever legal minimums are required. Yes. If an employee gets sick and can't work for five days and that employee is in Connecticut, and assume Connecticut has no law like Massachusetts, and then another employee in an identical situation gets sick and can't work for five days in Massachusetts, it seems to be the railroad's position that under the federal law it would not have to pay anything for the first four days with either of those employees, but it would have to pay for the fifth day at a rate of 60%, whereas for the Massachusetts employee, if the Massachusetts law is effective, it would have to pay 100% for the first four days and then 60% for the fifth day. That's what I'm understanding their argument is. I understand that to be their argument as well, although there is under the statute that we're talking about today a seven-day waiting period, which for purposes of your question, let's assume, has been satisfied. Generally, you cannot get any benefits under the RUIA until you satisfy the seven-day waiting period for the first illness you suffer in a measurement year. But what you have put forward as the railroad's position is the railroad's position. I think that it is inconsistent in the sense that they are arguing that the RUIA causes the problem, but the RUIA has an express preemption provision, and that's essentially a field preemption argument. So, excuse me, but if the statute is partially preempted, before one would reach the severability question, you'd have to look at the other statutes under which a preemption claim is made to see whether the remainder of the statute that might be severable is nonetheless preempted. Is that the logic of this situation? The logic of the situation is such that the district court did not have presented to it any of the other statutes which the railroads claim preempt the application, and so I think what you're asking me is if then we have to go back and look at those statutes, wouldn't we be readdressing the same questions under those particular statutes? Well, not quite, but wouldn't you have to reach them first? Yeah, I would say yes. Counsel, in terms of the relationship between the federal law and the state law, is it the case that by the terms of the federal law, an individual who is receiving pay under the sick leave provision, those days for which they are receiving remuneration, they don't count towards what is in effect the waiting period under the federal law, is that correct? That is correct. That is by the terms of the federal law itself, isn't that correct? Yes, that's the accommodation in the federal law, that if you're receiving paid sick leave, you're not eligible for benefits under the RUIA for the same period, and consequently the waiting period does not follow exactly what Judge Kayano was asking me before. In fact, every day that you receive compensation pay, wage compensation from the railroad, whether it's for actual work or for time lost, that is time that is outside the RUIA system. And so how would you coordinate the two benefit scenarios? Take a given employee who goes out, they're sick. Right. A given employee who is sick, and let's just say the employee is sick more than four days, because if the employee is sick for only two days, the RUIA doesn't grant that employee any benefits. But what about Massachusetts? Massachusetts does grant that employee, if he satisfied the earning period, full compensation paid, it's paid for time lost for those two days. So is each day the employee is out, day one, what happens in Massachusetts if we sustain the Massachusetts law? The employee gets paid. 100%? Yes. Same for day two, three, and four? Yes. And then what happens on day five? I believe the employee gets five days under the Massachusetts law. It's 40 hours that can be taken in hourly increments or the smallest increment that the employer allows. Okay, so what about day six, what then happens? Day six begins the first day of the waiting period under the RUIA. And so then there would be the RUIA waiting period, and then the 60% would kick in. After the waiting period has been satisfied. So it delays the onset of the waiting period that Congress established. Yes, it does. But Congress's establishment of the waiting period recognized that the waiting period would not apply while the employee was being paid for time lost. The statute is not delaying it. It's Congress decided that any day that the employee is not receiving pay for working or for time loss does not count. So that sounds to me like if I'm sick for a short period of time, I get, like I'm sick for one, two, three, four, five days, I get more benefits for being sick under Massachusetts law than I would if I were in Connecticut. Yes. That's correct. And so there is, if you have a, and I get more than I do under federal law, under federal law. That's right. Federal law doesn't give you any benefits for that brief period of time. So why isn't that an additional sickness benefit provided by Massachusetts? The reason is that the federal law actually is not a, the term sickness benefit is not used generically, it's used particularly, it's a term of art within the meaning of that statute. So it is. So we need, for your argument to succeed, we need to view the word sickness in the statute as not really meaning sickness, but as meaning unemployed and receiving certain particular type of benefits? The term is sickness benefit, not sickness alone. It's sickness benefit. And, in fact, if you're receiving sickness benefits under the RUIA, you are considered to be in the same place as someone who is unemployed. You're not necessarily unemployed, but you are treated the same way as someone who is receiving unemployment compensation on the unemployment side of the RUIA. I guess you would argue that the federal law itself makes sickness benefits a term of art because it wants to define what sickness benefits means within the term of the law. I would agree with that. It's not, it doesn't only purport to define it, it does define it, as does the agency that administers it. If I could have just a brief moment to address the severability. Certainly. It is our position that the statute does treat two different kinds, more than two different kinds of reasons that an employee would want to take the benefit of the Massachusetts statute, but those reasons are, in fact, divisible. How would you divide them? I would divide them the same way as my colleague, Mr. Martland, did. That, in fact, anything that is tied to the employee's own illness is, if we're able there to be preemption... Including that five-day period? Where they could get the state benefits, but they could not get federal benefits. That would be the part that would be preempted if you were to sever... So you agree that would be preempted? The employee, if you were to segregate the different parts of the statute for purposes of preemption, and I think that, by the way, that you certainly have that authority, the statute, in fact, says it, and I don't think there's any need to remand it. You have de novo reviewing it. Except we've got these other preemption issues. I understand that, Your Honor, but as to the severability part, I think it's very clear from the statute itself whether you find that Schwan is directly applicable. One part of Schwan is a teaching here, which is the state statute definitely indicates a desire to preserve the rest of the loaf if you can't get the entirety of the loaf. Certainly, but that's usually the case where there's a severability clause and a state statute. And so going back to the meat of your question, the benefits that would be preserved by severability would be the absence from work for purposes of caring for other family members and for dealing with the other particularly identified provisions inside the Massachusetts law, and we don't think that that in any way offends the RUIA because the RUIA didn't even consider those kinds of subjects and it's well outside the breadth of that statute. Just to follow up on Judge Kayada's question on, say, doctor's care versus going to court, if the railway employee is a victim of domestic violence, how would you parse that? It is away from the job injury. It is personal to the employee. And I think that in that sense... No, I'm contemplating this covers doctor's care as well as going to court. The state statute. Yes. Yes, I think that... So you were injured as a result of domestic violence and you go to see your doctor. Yes, I do not think that part would be preempted. If the other were, why wouldn't that part be your theory? My theory is that it's not a direct illness or injury that is contemplated by the RUIA. What do you mean by a direct illness or injury? Related to the employment somehow? Perhaps I misunderstood your question, Your Honor. Let me step back for a moment. You're asking me what is the difference between the employee being injured away from work by being hit by a truck versus being hit by a domestic partner, both of which requires the employee to go seek medical care. And under both cases, if they can't work because of that injury, they get the federal benefits. Your Honor, I think I misunderstood what you were saying in this state of the answer. I think that that would be preempted if it was the employee in there herself. Thank you. Okay. Good morning, Your Honors. Donald Monroe for the railroad industry. Thank you. I'd like to begin with the argument that both of my colleagues have made with respect to whether there is a definition of benefit in this statute that you can use to define the category of state sickness laws that are preempted. And what they're doing is they're saying, well, you should borrow the definition of sickness benefit in Section 351 and import it into Section 363B. And there's multiple reasons why that doesn't work. The first is just the language of the Act itself. It doesn't say sickness benefits in isolation in Section 363B, as they keep saying. It says sickness benefits under a sickness law of any state. That can only be a reference to some other category of benefits. It's not the RUAA benefit. It's benefits under state sickness laws. But doesn't the substance, whatever the definition of the phrase sickness benefits is, that controls the subsequent reference to state law? No, it does not, Your Honor, and here's why. The phrase benefit contains the parenthetical, which they ignore, which says that it doesn't refer to things that are clearly referring to something else. The Section 363B reference to state sickness laws has to be something else than the RUAA benefit. That's number one. Number two is the mere use of the phrase sickness benefit in 363B doesn't get them anywhere. They need something, some textual indication of comparability to say that, well, what we created in the benefit provided has to be the same as the benefit preempted, and the statute simply doesn't contain that. Let me give you an example. Suppose you have a federal law that said every citizen is going to get a vehicle, okay? And then the statute goes on to describe what that vehicle shall be. It shall be a white. It shall be a sedan. It shall have automatic transmission, et cetera, et cetera. And then it contains a provision that says this vehicle benefit shall be exclusive. People shall not have rights to vehicles under state laws. If a state then passed a law saying we're going to give everybody a red SUV, you wouldn't say that because the details of what they've provided are different that it's not preempted. There's no degree of comparability built into this statute. It simply says state sickness laws. And given that that is undefined, the case law is absolutely clear that you have to apply the plain and ordinary meaning of that phrase. So if that's the case, it takes me to their second main argument, which is that, well, sickness benefits should really be thought of as a short-term disability benefit. Now, leave aside the fact that the phrase short-term disability benefit doesn't apply or doesn't exist in this law. What the ordinary meaning of sickness benefit is, we contend, and to some extent they've conceded, is a wage substitute that is offered when an individual has to miss work for health-related reasons. Just in ordinary parlance, that is the way people refer to sickness benefits. It's the way that Massachusetts used the term in this very statute. It's the way this court uses the phrase on its own website. It's the way people refer to sickness benefits in just sort of casual conversation. And as further proof of that, virtually every other jurisdiction that has engaged in this dispute I understand they would not agree that what one has under the Massachusetts sick leave provision is a wage substitute in the way that a short-term disability plan is. Their position is that it is earned income as a result of the way in which the state law is written. And since it is earned income, it is not a substitute for income that they would not have because they are unable to work. So they would not accept the characterization that you just made. Perhaps they would not accept that characterization, but I think what they would agree with is that this is in the category of wages. In other words, as distinguished from reimbursement for medical expenses. This relates, I think, back to the questions that you were asking my friends earlier with respect to unemployment and remuneration. Let me just briefly address that. If you take their argument at face value, what it would mean is that so long as a state provides a benefit in the form of remuneration, it's not preempted. And I cannot conceive of a state sickness law that would not provide remuneration. So what they're saying is that this is just a nullity. You don't have to pay any attention to it. A state can ignore it as long as it decides to provide some money to the employee. That cannot be. It further cannot be that there is any significance to the label of unemployment. And let me explain why. They're saying, in essence, that an individual railroad worker remains employed while they receive the Massachusetts benefit, but is somehow not employed if they're receiving RUIA benefits. That is simply not true. And let me use the example that you were discussing with my friend, Mr. Wally. Suppose an individual goes out unsickly and they're entitled to both schemes. What the logic of their position is is that the person remains employed during the first five days and then suddenly becomes unemployed on the sixth day. There's no support in the record for that. These individuals remain on the railroad payroll throughout the entire period of their receipt of this benefit, and they've conceded that in their papers. So unemployment is a complete red herring. But the sickness benefit was engrafted onto a statute, which by its very nature is an unemployment statute, and it provides income replacement under conditions of unemployment. So its very inclusion in the statute, which is all about unemployment, suggests that the premise of this particular benefit is a form of unemployment. Well, even if you were to accept that as a logical premise, it's simply not true as a matter of statutory application. An individual does not need to be unemployed in any sense to receive the RUIA benefit. They just don't. I mean, they remain on the payroll. I mean, how are they unemployed in any sense that's different from an individual who takes two hours of FMLA or who takes two hours under this statute? They're employed in exactly the same way in both circumstances. So that argument just does not follow. This may be beyond the purview of the record, but perhaps if somebody is collecting short-term disability and is hence considered unemployed, that may have some effect on the length of service that they're accruing for purposes of a pension, for example, whereas somebody who is receiving sick leave and is treated as being employed, there's no interruption in the length of service. So, again, I don't know if the record addresses that point, but that characterization, unemployed, continually employed, may have implications for other aspects of the employment relationship. I do not believe it does, Your Honor, and I think you're correct. The record doesn't address this, but I'm not aware of any difference at all when someone is receiving RUA benefits versus benefits under this statute. And that brings me to sort of another point that I want to make sure I got in. To the extent that counsel is saying that, well, these are very different arguments. I think you heard him use his apples and oranges analogy again. We vehemently disagree with that. They are the same at the only level that makes any difference in that they are both providing sickness benefits to workers. They are both providing something in lieu of wages when someone is unable to work for health-related reasons. If you could go back to the employment issue, if you accepted the proposition that we would call the RUIA benefit some type of unemployment benefit, even though the person is still employed, is there any basis for then not similarly concluding that the Massachusetts benefit is an unemployment benefit? In other words, how could you distinguish the two? I mean, the logic is exactly the same. If you say someone is unemployed for purposes of the RUIA, I don't see how you could say they remain employed for purposes of the earned sick time law. They are in exactly the same posture. Again, there is no indication in the preemption provision that Congress thought about this at all. What they said we want to do is relieve railroads from the burdens of additional state sickness laws. They didn't care how the states designed them, and they were certainly aware that states are infinitely creative in how they come up with alternative statutory schemes. So, in that context, of course they are going to say, look, we are not going to worry about trying to guess how states might design their particular schemes. We are not going to worry about whether it is short term, long term, whatever. If it is a sickness law, it is out. And they did so in the context where they were giving employees something that nobody else got. They are not just depriving railroad workers of benefits that everybody else gets. They were saying, here is a new benefit scheme. You have chosen this. So, you are really making a, excuse me, but in terms that we have this express preemption provision, and you are really making essentially a plain meaning argument, and your plain meaning argument is sickness benefits, anything, any kind of law that a state would adopt that requires the railroad to pay some benefit that is premised on the sickness of the employee, as a matter of plain meaning, that is a sickness benefit. Is that an essential argument? That is similar to what I am saying, Your Honor. How would you refine that, please? I would refine it as follows. The phrase sickness benefits under a state sickness law, in ordinary common parlance, refers to anything that provides wages when an employee is unable to work for health-related reasons. I don't think it is limited, and there is no indication in the statute that it is limited, to the person's own personal sickness. And the further support for that is that Massachusetts doesn't think so either. Because they called all of the benefits that they are providing in the statute, sick time, which again accords with... the Railway Act that Congress meant to cover the employee who was sick, as opposed to the employee's family who was sick. Yes, Judge Lynch, I was... Do you have to concede that? I concede that the RUIA benefit design is limited to the individual worker's own sickness. What I am saying is that Massachusetts in its... Okay, I have that. But your preemption argument seems to read preemption more broadly than the individual employee. Yes, it does. All right. That may or may not be right. What about the situation of the domestic violence victim, first who goes to his or her own doctor for treatment of injury, and then secondly for the other alternative, going to court to get some relief? Our contention is that everything within the Urine Sick Time Law fits within the ordinary definition of a sickness benefit. Because the state chose to label it that way? No, Your Honor. Okay, how does going to court, if you're a domestic violence victim, fall within a sickness law? Well, I don't think it is tenable to say that whether or not something qualifies as a sickness law depends on the individual circumstances of how it's used by any individual in a particular case. I think you have to look at the reasons why the state provided the benefit. So if they had included in this section, Section 5, going to a meeting to sign mortgage papers and acquiring a new house, you would say that's a sickness benefit just because it's in the statute? Well, I don't think it's just a matter of the label, Your Honor. What I would suggest is that... Okay, so if it's not the label, then how about going to court to testify against someone who's assaulted you? Why is that a sickness benefit? Well, again, I mean, first of all, because Massachusetts didn't just call it that. They made a legislative finding that this is health-related. And if the situation were reversed and I were arguing that if the law said everything except sickness benefits are preempted and I was here saying they can't apply this domestic violence law, they would be fiercely saying to you, you have to defer to our legislative judgment... But health-related is not the same as sickness. So, for example, the law includes going to annual physical to stay healthy, preventative care. Why would that be called a sickness? Why would we deem that to be something that Congress wanted to preempt when it preempted sickness benefits? Well, I think, again, the basic test has to be does it fit within the ordinary meaning of sickness benefit? And to that, you can look to what the legislature said it was. But beyond that, you can look to the impact that it has on the railroads. And may I finish my answer? Yes. The impact it has on the railroads and the extent to which it would impose the same burdens on the industry that... That a home mortgage requirement would. Well, again, you can posit kind of, I think, increasingly strange hypotheticals as to what a state might do in a sickness law. And if you were concerned about that, I can offer you a potential test. In the Airline Deregulation Act context, what this Court and others have said is we have this very broad express preemption clause, but we're not going to extend it to something that is too remote, tenuous, or peripheral. That seems to me to be an appropriate sort of outer bounds if you're worried about sort of how far this might extend beyond something that is very clearly a sickness law, which in my view, the Massachusetts law clearly is. I only have a little bit of time left. If you would like me to address severability... Yes, please. I'm happy to do so. We, of course, don't think you ever need to reach severability given the fact that however difficult the mortgage example might be, this statute is an easier case. But if you were to reach the question, the issue of severability turns on whether the piece that you're excising is too intertwined with the rest of the statute to leave the rest of it in place. And I would suggest that cases like Schwann and Alaska Airlines that they relied on were situations where the Court was removing something that allowed the rest of the statute to exist quite easily. Here, you're talking about excising the core benefit from this law. And so you'd be creating something that nobody else in Massachusetts gets, essentially 40 hours of domestic violence leave. There's no indication that the Massachusetts legislature would want that. And there's certainly no indication that they would have imposed all these burdens, tracking, accrual, reporting, when they create it for a benefit that's this big, that they would then want it for a benefit that's this big. So this provision is not severable. And if you disagree with me on that, then I do suggest that Judge Lynch is correct that it needs to go back to the district court on that question. But, again, I urge the Court, you don't need to reach severability because the law is entirely practical. What would be the nature of the district court inquiry? Is it some attempt to divine what the legislative intent would be if this is all that's left of the statute and they would nevertheless want it to survive? What would be the point of sending it back? What would be the inquiry? Well, two points, Your Honor. One is that it is a question of legislative intent that I think would be more appropriately addressed by the district court in the first instance. There is also the point that Judge Lynch raised earlier with respect to the fact that there are these two other preemption arguments that we've raised. So there would be the need for additional district court proceedings. And the third point is a clear statement from the various parties as to which provisions or portions of clauses might be preempted. The domestic violence is a fairly good example of the need for greater clarity as to exactly what the argument is. I agree, Your Honor. I do think that with respect to the preventative care and caring for one's family members, I mean that is all very easily within the ordinary meaning of sickness benefit. So the only thing that I think would even plausibly fall outside of it is what the court has identified with respect to certain aspects of the domestic leave benefit. And then, again, that's why I just don't think you can leave that tiny bit of the law left and remove the rest of it and say it's just severable. Unless the court has any further questions. Thank you. Yes, actually. You've argued that the Massachusetts legislature would not have intended the railroads to be put under these burdens, but you simply asserted there are burdens. I'm just wondering whether if the issue were joined in the district court, you would be offering any evidence as to the nature of those burdens. If it were required, I could certainly do so. Essentially, they're twofold. There's the financial burden. There's the additional cost of providing the sick leave, and it is additive to the RUIA benefit. There's also the administrative burden, which I think is maybe even more what Congress had in mind, as you have railroad employees going from Massachusetts to Connecticut to New York and encountering different state schemes all along the way. You could have three, four, five different state schemes applied to the same train crew in the same day in New England. That's what they're trying to avoid. Thank you. Thank you. Mr. Martland, you have two minutes. Thank you, Your Honor. This isn't a relate-to-preemption statute. This is a statute with a preemption provision that is very narrow that preempts laws relating or laws for sickness benefits. Mr. Monroe used in his hypothetical at the beginning of his argument the term vehicle to analogize to sickness benefits. The difference is that the term sickness benefits, unlike vehicle, is a term of art in the statute that's defined, and we can look at the well-established meaning of the phrase sickness benefits in sections 351 and section 352 to know what it means in this statute. We've briefed that in both our blue brief and our reply brief. In addition, the legislative history here clearly establishes that in both 1938 and 1946, Congress was focused only on extending the preemption provision to the subject matter provided by the Act. That's the short-term insurance disability benefits that are provided in the RUIA and not extending those benefits any further and preempting any other future benefit that states could create in the future. Suppose we disagree with you on your second proposition. There's still a severance question, isn't there? Certainly, if you disagree with us as to our interpretation of the statute, there would be questions both as to whether this is also a sickness period, which, again, requires remuneration. If you disagreed with us on that, then we would get to the issue of whether this is severable. Again, we assert that the interpretation of section 363B is unambiguous, both based on the definitions of the phrase sickness benefits in section 351 and section 352, that it's well-established that the phrase's meaning should be interpreted here as well based on the AT&T case cited in the papers. If there are no further questions, I'd ask the Court to reverse. You're free to leave.